G. KENDALL SHARP, SENIOR UNITED STATES DISTRICT JUDGE
THIS CAUSE comes for consideration on Defendant ALH Administrative Services, LLC's ("ALH") Motion for Summary Judgment (the "Motion") (Doc. 37) to which Plaintiff Daniel Hay ("Hay") responded in opposition (Doc. 54), and ALH replied (Doc. 55). For the reasons that follow, the Motion will be granted.
I. BACKGROUND
Hay alleges that over the course of roughly three years, he was an employee of ALH as an insurance agent at three of its collectively operated facilities. (Doc. 25 ¶¶ 3-19.)[1] Hay first contracted with AmeriLife and Health Services of Lake County, LLC ("Lake") in December 2012. (Doc. 37 at 3; Hay Depo., Doc. 39-1 at 19:24-20:10.) Subsequently, Hay left Lake and contracted with AmeriLife and Health Services of Central Florida, LLC ("Central") in October 2013. (Doc. 37 at 3; Hay Depo. at 28:7-9, 28:24-25, 29:12-18.) Hay then left Central and contracted with AmeriLife and Health Services of Polk County, LLC ("Polk") in December 2014, where he remained until his contract was terminated in September 2015. (Doc. 25 ¶ 40; Doc. 37 at 3; Hay Depo. at 33:16-24.) As part of his contract with Polk, Hay executed an Independent Agent Agreement ("Agreement"), Non-Compete Agreement ("Non-Compete"), and Declaration. (Doc. 39-1 at 169-82, 199-200.) Hay also executed almost identical agreements with Lake and Central. (See id. at 151-68, 195-98.)
Under the heading "Relationship of the Parties," the Agreement provides that Hay would "be an independent contractor and that nothing contained herein shall be construed as creating the relationship of employer and employee ... for any purpose." (Id. at 151.) The Agreement additionally states that "[Hay] [would] not be treated as an employee for any reason, including for purposes of the Federal Insurance *1275 Contributions Act (FICA), the Social Security Act, the Federal Unemployment Tax Act, Federal Income Tax Withholding[,] or State Income tax Withholding, if applicable." (Id. ) Further, Hay was to "be responsible for and pay any and all expenses incurred in conducting business under the terms of [the] Agreement" and was "not eligible to participate in any fringe benefit programs sponsored by [Polk]." (Id. ) The Agreement moreover sets forth that Hay "[would] be acting on [his] own behalf and not as an employee ... of [Polk]," and that Hay was prohibited from "hold[ing] [himself] out in any capacity other than as an independent agent of the Insurance Company to which [he was] appointed." (Id. )
On September 13, 2015, Hay was admitted to the Winter Park Memorial Hospital due to two blood clots in his leg. (Doc. 25 ¶ 25; Doc. 37 at 5.) Hay was discharged from the hospital on the next day, at which time he was referred to Baldwin Park, Florida Veterans' Administration ("VA") for coordinated care with his primary care physician ("PCP"). (Doc. 25 ¶ 28; Doc. 37 at 5.) Hay's PCP recommended him three weeks bed rest, and Hay informed his ALH manager, Chance Robinson ("Robinson"), of his PCP's recommendation that same day. (Doc. 25 ¶¶ 29-30; Doc. 37 at 5-6.) In response, Robinson told Hay, " 'oh, wow, well take care of yourself and keep us up to date.' " (Doc. 25 ¶ 33; Doc. 37 at 6.) Hay asserts that he additionally: (1) faxed his PCP's recommendation letter to ALH; (2) faxed his PCP's recommendation letter to ALH's supervisor, Lee Jay Hart, in Winter Haven, Florida; and (3) called ALH's headquarters in Clearwater, Florida to inform them of the situation and of his need for leave pursuant to the Family and Medical Leave Act ("FMLA"). (Doc. 25 ¶¶ 34-35.) Further, Hay asserts that he kept in touch with Robinson over the following weeks and informed Robinson of his plan to return to work on October 4, 2015. (Doc. 25 ¶ 37.)
On September 23, 2015, ALH alleges that Polk received email correspondence from an insurance company with which Hay had been appointed to through Polk, the Independent Order of Foresters ("Foresters"). (Doc. 37 at 6.) Foresters purportedly advised Polk that Hay had applied to and was being appointed by a competing insurance agency, American Senior Benefits ("ASB"), and informed Polk that Hay's appointment with Foresters through Polk was terminated. (Id. at 5-6.) ALH asserts that Polk additionally received a copy of correspondence from Foresters to Hay, welcoming Hay and assigning him a producer number. (Id. at 6.) Hay's contract with Polk was subsequently terminated on September 29, 2015. (Doc. 25 ¶ 40; Doc. 37 at 6.)
On November 28, 2016, Hay filed his Amended Complaint (Doc. 25) against ALH alleging violations of the FMLA. Specifically, Hay asserts that ALH interfered with his FMLA rights and retaliated against him for exercising his FMLA rights. (Id. ¶¶ 43-52.) ALH now moves for summary judgment against Hay. (Doc. 37.)
II. LEGAL STANDARD
A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Id. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a *1276 reasonable jury could return a verdict for the nonmoving party." Id.
In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may rely solely on the pleadings to satisfy its burden. Celotex Corp. v. Catrett , 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A nonmoving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. Id. at 324, 106 S.Ct. 2548. If the evidence offered by the non-moving party "is merely colorable, or is not significantly probative," the Court may grant summary judgment. Anderson , 477 U.S. at 249-50, 106 S.Ct. 2505. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case "with respect to which [the party] has the burden of proof." Celotex , 477 U.S. at 323, 106 S.Ct. 2548.
III. ANALYSIS
ALH contends that it is entitled to summary judgment on Hay's claims of interference and retaliation under the FMLA because Hay worked for ALH as an independent contractor rather than an employee. (Doc. 37 at 9-18.) The FMLA provides that the term 'employee' has the same meaning as in the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 2611(3). There, with limited exceptions, the term employee is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). When determining whether an individual is an employee for purposes of both the FMLA and FLSA, "courts must look to the 'economic reality of whether the putative employee is economically dependent upon the alleged employer.' " Cardinale v. S. Homes of Polk Cty., Inc. , No. 8:06-CV-1295-JDW-MSS, 2008 WL 788460, at *3 (M.D. Fla. Mar. 19, 2008), aff'd , 310 Fed.Appx. 311 (11th Cir. 2009) (quoting Demers v. Adams Homes of Nw. Fla., Inc. , No. 6:06-cv-1235-ORL-31KRS, 2007 WL 3333440, at *2 (M.D. Fla. Nov. 7, 2007) ). "This inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.' " Scantland v. Jeffry Knight, Inc. , 721 F.3d 1308, 1311 (11th Cir. 2013) (quoting Rutherford Food Corp. v. McComb , 331 U.S. 722, 729, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) ).
The economic realities test considers the following six factors:
1) the degree of control exercised by the alleged employer, 2) the relative investments of the alleged employer and employee, 3) the degree to which the employee's opportunity for profit and loss is determined by the employer, 4) the skill and initiative required in performing the job, 5) the permanency of the relationship, and 6) the degree to which the alleged employee's tasks are integral to the employer's business.
Cardinale , 2008 WL 788460, at *3. These factors, however, are non-exclusive, and no single factor is dominant. Scantland , 721 F.3d at 1312. While some aspects of ALH and Hay's relationship are consistent with an employer-employee relationship under the economic realities test, the evidence collectively weighs in favor of ALH's position that Hay was an independent contractor.
A. Degree of Control
" 'Control is only significant when it shows an individual exerts such *1277 control over a meaningful part of the business that she stands as a separate economic entity.' " Cardinale , 2008 WL 788460, at *4 (quoting Usery v. Pilgrim Equip. Co., Inc. , 527 F.2d 1308, 1312-13 (5th Cir. 1976) ).[2] It is undisputed that Hay had the ability to find leads on his own account, to purchase leads from Polk, and to receive leads from referrals. (Doc. 37 at 11; See Hay Depo. at 112:15-19.) Additionally, Hay does not refute ALH's contention that Hay had the right to employ assistants to help with administrative functions of the sales process. (See Doc. 37 at 11.) Nonetheless, Hay attests that ALH had the right to change Hay's commission schedule and to modify the agreements. (Doc. 54 at 5-6.) Hay also asserts that Hay was required to attend a mandatory new hire training session, to use certain forms and checklists, and to schedule routine meetings with managers. (Id. at 6-7.) The parties dispute whether Hay set his own hours, schedule, and driving route, whether Hay could choose which products to sell, and whether Hay could exercise independent judgment regarding his sales techniques. (Doc. 37 at 11; Doc. 54 at 5-7, 9; Doc. 54-1 at 4, 5.) The parties also disagree as to whether Hay was required to attend mandatory morning meetings and whether he was adversely affected by missing same. (Doc. 37 at 11; Doc. 54 at 7; Doc. 54-1 at 4.)
While ALH undeniably exerted some control over Hay, the Court does not find that ALH exercised substantial control over a meaningful part of Hay's business. In addition to Hay's ability to generate leads and employ assistants, the Court finds it notable that Hay was permitted to obtain certain other work while contracted with ALH, and in fact, did work full time for Connextions as a benefit counselor while working for ALH. (Doc. 37 at 13; Hay Depo. at 54:9-16, 56:4-7, 61:1-10.) While not dispositive, the record also evidences that both Hay and ALH understood Hay to be an independent contractor. For instance, the language of the Agreement clearly labels Hay as an independent contractor, Hay treated himself as an independent contractor for tax purposes, and Hay referenced himself as an independent contractor during his deposition. (Hay Depo. at 26:3-7, 38:2-8; Doc. 54 at 11-12.) The factor of control collectively weighs in favor of ALH's position that Hay was an independent contractor.
B. Relative Investments
The terms of the agreement provide that Hay would be responsible "for any and all expenses incurred in conducting business" with ALH. (Doc. 39-1 at 169.) Hay does not refute ALH's assertion that Hay paid for his own desk, chair, copier, fax machine, secretarial services, phone expenses, technology fees, transportation expenses, and lead acquisition. (See Doc. 37 at 13-14.) Hay in fact admits that he leased the use of a desk, iPad, and leads for $175.00 per month. (Doc. 54-1 ¶ 14; Doc. 54 at 8.) Even so, Hay argues that "[his] expenditures were minor compared to those of [ALH] for advertising, facilities, maintenance, recruitment, training, etc." (Id. ) However, "the Eleventh Circuit has not adopted a comparative approach to this factor," and therefore Hay's argument is not persuasive. Heningburg v. CSS Corp. , No. 1:13-CV-2184-ODE, 2015 WL 13081182, at *9 (N.D. Ga. Aug. 14, 2015) (denying plaintiff's request that the court take a comparative approach to the factor of relative investments under the economic realities test). Hay's investment in business *1278 expenses indicates an independent contractor arrangement.
C. Opportunity for Profit and Loss
It is undisputed that Hay received compensation on a commission-only basis. (Doc. 37 at 12; Doc. 54 at 9.) The parties additionally agree that Hay was not precluded from obtaining outside work while contracted with ALH, and Hay in fact worked full time for Connextions as a benefit counselor while working for ALH. (Doc. 37 at 13; Doc. 39-1 at 54:9-16, 56:4-7, 61:1-10.) Hay attests that he did not have the ability to negotiate the rates at which he was paid, and the parties dispute whether Hay could choose which products he would sell or set his own hours, schedule, and driving route. (Doc. 37 at 11; Doc. 54 at 5, 7, 9; Doc. 54-1 at 5.) On the whole, the Court finds that the opportunity for profit and loss is a neutral factor in determining whether Hay was an employee.
D. Skill and Initiative Required
It is undisputed that to become an insurance agent, Hay had to pass a state exam, obtain proper licensure, and take continuing education courses. (Doc. 37 at 14; Doc. 54 at 10.) The Middle District of Florida has held that "the sale of insurance and other financial products is a highly specialized and heavily regulated field." Dahl v. Ameri-Life Health Servs. of Sara-Bay, LLC , No. 805CV-66T-17TBM, 2006 WL 2884962, at *4 (M.D. Fla. Oct. 10, 2006). Hay, however, argues that "no specialized skill [was] needed" because "[ALH would] teach everything you need to know." (Doc. 54 at 10.) In Scantland , the court found that technician plaintiffs were "dependent upon [defendant] to equip them with the skills necessary to do their jobs" where plaintiffs were not required to have any previous experience, and evidence was presented that defendant provided plaintiffs approximately three weeks of on and off the job training. Scantland , 721 F.3d at 1318. Here, in contrast to the factual scenario in Scantland , Hay admits that he "was a licensed agent when he first associated with Lake and throughout his relationship with Central and Polk, having obtained his licensure without assistance or training from ALH." (Doc. 37 at 14.) ALH also attests that Hay advised clients without a supervisory presence. (Doc. 37 at 14.) The highly specialized nature of Hay's position is indicative of an independent contractor relationship rather than an employer-employee relationship.
E. Permanency of Relationship
Incontrovertibly, the Agreement was for an indefinite duration. (See Doc. 54 at 11; Doc. 39-1 at 212.) Also, Hay contracted with Lake, Central, and Polk between December 2012 and September 2015, "never staying contracted with any one more than 14 months." (Doc. 37 at 14-15.) Further, while contracted with ALH, Hay worked full time for Connextions as a benefit counselor. (Doc. 37 at 13; Doc. 39-1 at 54:9-16, 56:4-7, 61:1-10.) These undisputed facts suggest that Hay lacked the permanence of relationship that is indicative of an employment arrangement.
F. Degree to which Hay's Tasks were Integral
Both parties agree that Hay's tasks as an insurance agent were integral to ALH's business. (Doc. 37 at 15; Doc. 54 at 11.) Accordingly, this factor weighs in favor of an employer-employee relationship.
G. Weighing the factors
On the facts before it, the Court finds that four factors-control, investment, skill/initiative, and permanency/duration-favor ALH's position that Hay was an independent contractor. The degree to which Hay's tasks were integral to ALH's business, however, favors Hay's position *1279 that he was an employee. Finally, the profit/loss factor is neutral. It is clear that there is no genuine dispute as to any material fact precluding summary judgment. Thus, considering all inferences drawn from the underlying facts in a light most favorable to Hay and resolving all reasonable doubts against ALH, the Court concludes that summary judgment will be entered in ALH's favor on Hay's FMLA claims.[3]
IV. CONCLUSION
For the foregoing reasons, it is ORDERED and ADJUDGED that Defendant ALH Administrative Services, LLC's Motion for Summary Judgment (Doc. 37) is GRANTED . The Clerk of Court is directed to ENTER JUDGMENT in favor of Defendant ALH Administrative Services, LLC and against Plaintiff Daniel Hay and to CLOSE the case.
DONE and ORDERED in Orlando, Florida on this 21 day of June, 2017.

ALH disputes that it collectively operates any facilities and instead maintains that all referenced facilities are separate entities from ALH. (See Doc. 30 ¶ 18.) However, only for purposes of this Order, the Court will treat all referenced facilities as collectively operated by ALH.

Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981 are binding on the United States Court of Appeals for the Eleventh Circuit. Bonner v. City of Prichard , 661 F.2d 1206, 1209 (11th Cir. 1981).

The Court declines to address ALH's additional arguments that ALH was not an "employer" for purposes of the FMLA, and that Hay was terminated based upon legitimate non-discriminatory and non-retaliatory business reasons unrelated to any claimed engagement in an activity protected under the FMLA. (See Doc. 37 at 18-22.)